IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:06-CT-3069-FL

|  |  |  |
|---|---|---|
| MICHAEL RODNEY MCKEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| PETER KEYZER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion to dismiss (DE # 30) of defendants Dr. Peter Keyser (hereinafter "defendant Keyser"),[1] Physician Assistant Amy Mackey (hereinafter "defendant Mackey"), and Dr. Andrew Bush (hereinafter "defendant Bush") pursuant to Federal Rule of Civil Procedure 12(b)(6). In addition, the matter is before the court on the separate motions for summary judgment (DE ## 23, 53, and 63), pursuant to Federal Rule of Civil Procedure 56, of defendant Nurse Hope Harrison (hereinafter "defendant Harrison"), Sheriff Eddie Cathey (hereinafter "defendant Cathey"), and defendants Keyser, Mackey, and Bush. Also before the court are the two motions for protective order/motions to strike (DE ## 36 and 46) of defendants Keyser, Mackey, and Bush. Finally, plaintiff filed the following motions: (1) motion for service (DE # 26); (2) motion for discovery (DE # 41); (3) motion requesting Rule 11 sanctions (DE # 42); (4) motion to strike motion for protective order (DE # 43); (5) motion for recusal review (DE # 52); (6) motion for joinder and amendment relating back to the original claim (DE # 75); (7) motion for modification

---

[1] Plaintiff, in his complaint, incorrectly refers to defendant Keyser as defendant "Keyzer."

of plaintiff's request for sanctions against attorney Elizabeth McCullough (hereinafter "attorney McCullough") (DE # 76); (8) motion requesting specific issues be tried by a jury with all other triable issues (DE # 77); (9) motion to find attorneys James Philip Allen (hereinafter "attorney Allen") and McCullough in contempt ( DE # 80); (10) motion to dismiss or in the alternative strike the response of defendants Keyser, Mackey, and Bush to plaintiff's motion to amend/joinder (DE # 84); (11) motion to strike defendant Cathey's evidence (DE # 87); (12) motion for supplemental discovery (DE # 96); and (13) motion to strike defendant Cathey's affidavits (DE # 97). These matters are ripe for adjudication. For the following reasons, the court rules upon the motions as follows.

## STATEMENT OF THE CASE

On July 12, 2006, plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that defendants Keyser, Harrison, Mackey, Cathey, and Bush were deliberately indifferent to his serious medical condition in violation of the Fourteenth and Eighth Amendments of the United States Constitution.[2] Plaintiff also named Union County as a defendant in his complaint. The court conducted a frivolity review on August 17, 2006, and dismissed plaintiff's claim against Union County, but allowed plaintiff's claim against the remaining defendants to proceed.

On August 8, 2006, plaintiff filed a motion to compel service and summons, and on September 28, 2006, defendant Cathey filed a motion to stay discovery/motion for extension of time.

---

[2] Plaintiff's complaint complains about incidents that occurred while plaintiff was both a pretrial detainee and when he became a state inmate. Confinement conditions of state pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). However, the analysis under the Due Process Clause and the analysis under the Eighth Amendment share much in common. See Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992). Accordingly, plaintiff's Fourteenth Amendment claim will be analyzed under the Eighth Amendment.

Then, on October 3, 2006, plaintiff filed a motion for appointment of medical expert and a motion to withdraw from the North Carolina Prisoner Legal Services (hereinafter "NCPLS") investigation. The court, on October 25, 2006, denied as premature defendant Cathey's motion to stay discovery, denied plaintiff's motion for appointment of a medical expert, and denied as moot plaintiff's motion to compel service and summons. Regarding plaintiff's motion to withdraw from NCPLS's investigation, the court noted that it appeared plaintiff was under the impression that he was entitled to appointment of counsel. Accordingly, the court informed plaintiff that, to the extent he was requesting the court to appoint counsel, the request was denied. In light of this information, the court requested that plaintiff inform it whether he still wished to vacate NCPLS's investigation. Plaintiff was provided ten (10) days to comply with the court's order.

On October 26, 2006, plaintiff filed a motion to strike defendant Cathey's motion to stay. Then, on November 1, 2006, plaintiff responded to the court's October 25, 2006 order and stated that he would allow NCPLS to conduct their investigation. Plaintiff also made a second request for appointment of counsel in his November 1, 2006 pleading. On November 13, 2006, defendant Cathey filed a response to plaintiff's motion to strike. The next day, plaintiff, through NCPLS, notified the court that he declined NCPLS's services.

On December 1, 2006, defendant Harrison filed a motion for summary judgment, arguing that plaintiff's claim against her is without merit. Plaintiff then filed a motion for service and a motion for extension of time to file a response to defendant Harrison's motion for summary judgment. On December 12, 2006, the court granted plaintiff's motion for an extension of time to respond to defendant Harrison's motion for summary judgment.

3

On December 13, 2006, defendants Keyser, Mackey, and Bush moved to dismiss plaintiff's complaint, arguing that plaintiff failed to exhaust his administrative remedies. On December 18, 2006, the court entered an order denying plaintiff's second request for appointment of counsel in his response to this court's October 25, 2006 order. The court also denied as moot plaintiff's motion to strike defendant Cathey's motion to stay.

Plaintiff filed a response to defendant Harrison's motion for summary judgment on December 18, 2006. The next day, defendants Keyser, Mackey, and Bush moved the court for a protective order. Plaintiff then moved for an extension of time to file his response to the motions for summary judgment submitted by defendant Cathey and defendants Keyser, Mackey, and Bush. The court thereafter granted plaintiff's motion for extension of time.

On January 11, 2007, plaintiff filed a motion for summary judgment against defendants Keyser, Mackey, Bush, and Cathey. On the same day, he also filed a motion for discovery, a motion requesting Rule 11 sanctions, and a motion to strike the motion for protective order filed by defendants Keyser, Mackey, and Bush. Defendants Keyser, Mackey, and Bush thereafter filed a motion for extension of time to respond to plaintiff's motion for summary judgment and a motion for a protective order. On January 22, 2007, the court granted defendants' motion for extension of time.

On January 23, 2007, defendant Cathey moved for an extension of time to respond to plaintiff's motion for summary judgment, which extension was granted on January 24, 2007. Defendants Keyser, Mackey, and Bush thereafter responded to plaintiff's motion for sanctions and plaintiff filed a response to defendants' motion for a protective order. Plaintiff then filed a motion for recusal review.

4

On February 20, 2007, defendant Cathey filed a motion for summary judgment, arguing that plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies. Alternatively, defendant Cathey argued that plaintiff's claim is without merit. On the same date, defendant Cathey also filed a response to plaintiff's motion for summary judgment.

On March 1, 2007, plaintiff filed a request for verification of defendant Cathey's 42 U.S.C. § 1997e's grievance procedure. Plaintiff then responded to defendant Cathey's motion for summary judgment. On March 9, 2007, defendants Keyser, Mackey, and Bush filed a motion for summary judgment. On the same date, defendants Keyser, Mackey, and Bush filed a supplement to their motion for summary judgment.

On March 12, 2007, defendant Cathey filed a response in opposition to plaintiff's request for verification of defendant Cathey's 42 U.S.C. § 1997e grievance system. Plaintiff then responded to the motion for summary judgment of defendants Keyser, Mackey, and Bush. Plaintiff also filed a motion for joinder and amendment relating back to the original claim, a motion for modification to his request for sanctions, and a motion requesting that specific issues be tried by a jury with all other triable issues.

On March 29, 2007, defendants Keyser, Mackey, and Bush filed a response to plaintiff's motion for modification of his request for sanctions and a response to plaintiff's cross-motion for summary judgment. Plaintiff then filed a motion to find attorneys Allen and McCullough in contempt of court. Thereafter, attorney Allen filed a response to plaintiff's motion to find him in contempt, defendant Cathey filed a response to plaintiff's motion/request for joinder and amendment relating back to the original claim, and defendants Keyser, Mackey, and Bush filed a response in opposition to plaintiff's motion to find attorneys Allen and McCullough in contempt of court.

5

On April 18, 2007, plaintiff filed a motion to dismiss, or in the alternative, motion to strike the response to plaintiff's amend/joinder by defendants Keyser, Mackey, and Bush. Defendants Keyser, Mackey, Bush, and Cathey filed a response. Plaintiff then filed a motion to strike defendant Cathey's evidence, to which defendant Cathey responded. On July 23, 2007, plaintiff filed a reply to defendant Cathey's response, and a motion for supplemental discovery and a motion to strike defendant Cathey's affidavits.

## STATEMENT OF THE FACTS

The facts viewed in the light most favorable to plaintiff are as follows. On July 30, 2003, plaintiff was booked into the Union County Detention Facility (hereinafter "the detention facility") on charges of assault with a deadly weapon and assault on a female. (Stewart Aff. ¶ 3 and Ex. 1.) Plaintiff, who was medically screened, advised the detention facility staff that he was being treated for depression. (Stewart Aff. ¶ 4 and Ex. 2.) Also, plaintiff was given the opportunity to indicate whether he was suicidal but did not do so, nor did the booking officer observe any signs of suicidal tendencies. (Stewart Aff. ¶¶ 4 and 5, Exs. 2 and 3.)

On September 21, 2003, corrections officers approached plaintiff after the evening meal and asked him if he was in possession of cake. (Stewart Aff. ¶ 8 and Nelson Aff. p. 1.) Plaintiff was informed that he was not permitted to have cake because of his diabetic condition. (Nelson Aff. p. 1.) Plaintiff then became agitated and the officers threatened him with segregation. (Id.) In response, plaintiff ran up the stairs, stating that he was not going to A-block, and jumped from the second tier of the detention facility. (Nelson Aff. p. 2 and Stewart Aff. ¶ 8.) Prison officials responded by calling an ambulance one minute after plaintiff jumped; the ambulance arrived eight minutes thereafter. (Stewart Aff. ¶ 8, Exs. 4, 5, and 6.) Plaintiff then was taken to the Union

6

Regional Medical Center where he received emergency treatment. (Stewart Aff. ¶ 9, Ex. 7.) Plaintiff was diagnosed with bilateral closed fractures of the calcani (bones that form the heel). (Bush Aff., Ex. A.) Plaintiff was discharged from the hospital on September 21, 2003, and returned to the detention facility. (Stewart Aff. ¶ 10.) Upon his return to the detention facility, plaintiff was given several mattresses to elevate his feet, and he was administered pain medication.[3] (Id. ¶ 11, Ex. 8.)

On September 22, 2003, a deputy sheriff from the Union County Sheriff's Office presented a motion and affidavit to the Union County Superior Court requesting the entry of a safekeeping order pursuant to N.C. Gen. Stat. § 162.39. (Stewart Aff. ¶ 12, Ex. 9.) The safekeeping order sought a transfer of plaintiff to the North Carolina Department of Correction (hereinafter "DOC"). (Id.) The Superior Court granted the safekeeping motion that same day and plaintiff was transferred to DOC custody at Central Prison. (Id. ¶ 13 and Bush Aff. ¶ 4.)

On September 25, 2003, plaintiff saw defendant Bush at Central Prison for an orthopedic consult. (Bush Aff. ¶ 5, Ex. A.) Defendant Bush examined plaintiff and observed that he had a significantly swollen right heel with blisters and that his left heel was slightly swollen. (Bush Aff. ¶ 6, Ex. B.) Additionally, x-ray results revealed a severely comminuted (broken into several pieces) right calcaneus fracture with loss of anatomy of the subtalar joint and a calcaneus tongue type fracture with moderate depression of the posterior facet. (Id.) Based upon these findings and observations, defendant Bush recommended the following: (1) computed tomography (hereinafter "CT") scans of both calcani; (2) bed rest with elevation of the lower extremities with six to eight

---

[3] Nurse Keiler made a special trip to the detention facility on September 21, 2003, a Sunday, picked up plaintiff's prescription, filled the prescription, and returned it to the detention facility so that plaintiff could take his pain medication that day. (Stewart Aff. ¶ 11.)

7

pillows or the equivalent and ice packs; and (3) a follow-up consult one week after the completion of plaintiff's CT scans. (Id.)

Plaintiff returned to defendant Bush for a follow up appointment on October 6, 2006. Plaintiff's CT scans were not available at this time. (Bush Aff. ¶ 7, Ex. C.) Defendant Bush examined plaintiff and noted decreased swelling and a healing fracture with blisters on the medial malleolus. (Id.) Defendant Bush recommended open reduction internal fixation on the right and left calcaneus fractures at Durham Regional Hospital. (Id.) He also ordered a follow-up appointment with plaintiff four weeks later. (Id.)

On October 20, 2006, plaintiff had another follow-up appointment with defendant Bush. (Bush Aff. ¶ 8, Ex. D.) At this time, plaintiff's CT scan results were available. Defendant Bush noted that the overall alignment of plaintiff's left calcaneus was acceptable and did not require surgical intervention. (Id.) He also noted that plaintiff's right comminution was too great to allow adequate fixation. (Id.) Based on these findings, defendant Bush informed plaintiff that it would be best to let his foot heal prior to considering surgery. (Id.) Defendant Bush also recommended the following: (1) plaintiff remain non-weight bearing for six more weeks; (2) plaintiff receive five hundred (500) milligrams of Keflex (an antibiotic) four times per day; (3) plaintiff receive increased pain medication prior to physical therapy and sleep; (4) plaintiff receive whirlpool physical therapy with range of motion exercises on a daily basis; (5) plaintiff receive dry dressings on his right ankle wound; and (6) plaintiff receive a follow-up appointment in one week. (Id.)

Plaintiff did not attend his scheduled follow-up appointment. (Bush Aff. ¶ 9.) Thereafter, on November 2, 2003, plaintiff was transferred from Central Prison back to the detention facility.

8

(Id.) Plaintiff remained at the detention facility until he was sentenced on March 14, 2005. (Stewart Aff. ¶ 14.)

Following his sentencing, plaintiff temporarily was transferred to Hoke Correctional Institute (hereinafter "HCI"). (Mackey Aff. ¶ 4.) At HCI, plaintiff was examined by defendant Mackey on July 8, 2005. (Mackey Aff. ¶ 5, Ex. A.) In the course of his appointment with defendant Mackey, plaintiff complained about pain from the injuries he received as a result of the September 30, 2003 incident. (Id.) He also told defendant Mackey that he had broken his ankle subsequent to the September 30, 2003 incident, and that he had slipped down some stairs on another occasion. (Id.) Based upon her observations, defendant Mackey ordered the following: (1) housing upstairs with meals to his room; (2) issuance of an elevator pass and bottom bunk assignment; and (3) issuance of a new cane. (Id.) Defendant Mackey also issued the following activity restrictions: (1) standing-thirty (30) minutes; (2) walking-one hundred (100) yards; (3) climbing-none; (4) lifting/pushing/pulling-none; and (5) right lower extremity-weight bearing as tolerated. (Id.)

Around July 22, 2005, plaintiff submitted a sick call request, complaining that the prescribed Ibuprofen was not strong enough for his foot pain. (Mackey Aff. ¶ 6, Ex. A.) Defendant Mackey responded by prescribing plaintiff Percogesic to be taken twice daily for three months. (Id.) A few weeks later, on August 2, 2005, defendant Mackey reviewed plaintiff's medical records and noted that plaintiff had submitted several sick call requests complaining that his medications were not working. (Mackey Aff. ¶ 7, Ex. B.) As a result, defendant Mackey prescribed plaintiff eight hundred (800) milligrams of Ibuprofen to be taken twice daily for three months, in addition to the previously prescribed Percogesic. (Id.) Additionally, defendant Mackey noted that plaintiff's

9

medications were to be taken by direct observation therapy due to plaintiff's history of drug abuse. (Id.)

Defendant Mackey reviewed plaintiff's chart on August 12, 2005, and noted that plaintiff had skipped approximately eighteen doses of his prescribed pain medication. (Mackey Aff. ¶ 8, Ex. C.) Also during this time period, defendant Mackey received a copy of plaintiff's medical records from WakeMed and Carolina Bone and Joint. (Id.) Defendant Mackey then referred plaintiff to Carolina Bone and Joint for further treatment. (Id.)

On September 15, 2005, defendant Mackey noted that plaintiff still was having meals delivered to his room. (Mackey Aff. ¶ 10, Ex. C.) Defendant Mackey also noted that Carolina Bone and Joint recommended that he walk and exercise. (Id.) As a result of these observations, defendant Mackey discontinued her order that plaintiff receive meals in his room. (Id.)

On November 3, 2005, plaintiff was taken to the medical clinic because he was non-compliant with his oral medications. (Mackey Aff. ¶ 12, Ex. E.) Plaintiff informed defendant Mackey that he got his medication when he could and that he slept a lot. (Id.) He also stated that he had not been taking his morning doses of Ibuprofen because it upset his stomach. (Id.) Plaintiff then asked defendant Mackey when he was going to receive the surgery defendant Bush ordered and why the meals to his room had been discontinued. (Id.) In response, defendant Mackey informed him that the meals to his room had been discontinued because the notes from Carolina Bone and Joint indicated that he was supposed to be walking and exercising. (Id.) She also informed plaintiff that the notes from Carolina Bone and Joint indicated that plaintiff had received treatment and physical therapy for his injuries. (Id.) Finally, defendant Mackey informed plaintiff that defendant Bush would have performed surgery had surgery been necessary. (Id.)

10

Following her examination of plaintiff, defendant Mackey prescribed plaintiff one hundred fifty (150) milligrams of Zantac to be taken twice daily for three months, along with reordering his Ibuprofen and Percogesic. (Id.) Defendant Mackey also ordered that plaintiff's medications be taken by direct observation therapy due to his history of non-compliance with medications. (Id.) On November 29, 2005, defendant Mackey discontinued plaintiff's Zantac prescription because plaintiff was not taking it. (Mackey Aff. ¶ 16, Ex. G.)

On December 15, 2005, plaintiff again went to the medical clinic seeking stronger pain medication. (Mackey Aff. ¶ 17, Ex. G.) Defendant Mackey reviewed the Medication Administration Record and noted that plaintiff had missed five morning doses of Ibuprofen and thirteen (13) doses of Percogesic. (Id.) Based upon the Medication Administration Record, defendant Mackey concluded that plaintiff did not need stronger pain medication because he had missed so many doses of his current pain medications. (Id.) In response to plaintiff's pain complaints, defendant Mackey prescribed thick cushioned insoles for his shoes for one year and also ordered bilateral x-rays of his feet. (Id.)

On January 5, 2006, defendant Mackey noted plaintiff's non-compliance with his morning medication. (Mackey Aff. ¶ 19, Ex. H.) Then, on January 13, 2006, defendant Mackey reviewed plaintiff's x-ray results and noted the following: "(L) foot spurring to plantar calcaneal. Normal alignment, no acute fracture or dislocation. ® foot healed deformity of right calcaneous. Osteopenia. No acute fracture or dislocation." (Mackey Aff. ¶ 20, Ex. I.) This was the last date defendant Mackey treated plaintiff because plaintiff was transferred to Harnett Correctional Institute (hereinafter "Harnett") on January 19, 2006. (Mackey Aff. ¶ 21.)

11

Upon his transfer to Harnett, custody staff confiscated a pair of boots from plaintiff because they were not authorized inmate footwear, and plaintiff did not have a medical order authorizing him to have special boots. (Harrison Aff. ¶ 3.) Plaintiff later signed a document instructing the custody staff to send his boots to his home. (Id.)

On January 25, 2006, defendant Keyser reviewed plaintiff's chart and treated him for a wooden splinter in his thigh. (Keyser Aff. ¶ 5, Ex. A.) Defendant Keyser thereafter reviewed plaintiff's labs and medications on January 26, 2006, and scheduled an appointment with plaintiff. (Keyser Aff. ¶ 6, Ex. A.)

On January 30, 2006, plaintiff attended his appointment with defendant Keyser, at which plaintiff reported a history of crushing his ankles and heels in 2004. (Keyser Aff. ¶ 7, Ex. B.) Defendant Keyser noted that plaintiff had difficulty walking and a restrictive range of motion in his right ankle. (Id.) Defendant Keyser ultimately diagnosed plaintiff with post-traumatic deformity of the right calcaneus and stressed to plaintiff the importance of losing weight. (Id.) As a result of his findings, defendant Keyser ordered custom high top "Dr. 2" shoes for support and strengthening of plaintiff's ankle. (Id.)

On February 9, 2006, defendant Keyser reviewed plaintiff's pain medication orders and re-ordered Percogesic to be taken three times per day for three months. (Keyser Aff. ¶ 8, Ex. B.) Then, on June 13, 2006, defendant Keyser saw plaintiff and noted that plaintiff had an antalgic gait, was alert and oriented, and that his neurovascular status was intact.[4] (Keyser Aff. ¶ 15, Ex. F.)

---

[4] From February 9, 2006 through June 13, 2006, defendant Keyser saw and treated plaintiff on a regular basis for conditions not related to this action. (Keyser Aff. ¶¶ 9-15.)

Defendant Keyser diagnosed plaintiff with poorly controlled diabetes mellitus and poorly controlled lipids. (Id.)

On March 1, 2006, the Utilization Review Board (hereinafter "URB") approved defendant Keyser's request that plaintiff be provided "Dr. 2" shoes. (Harrison Aff. ¶ 4 and attach.) The next day, an order for the shoes was sent to the clothes house so that the shoes could be manufactured. (Id.) Plaintiff received his shoes on August 22, 2006, but ultimately returned them for a larger size. (Id.)

## DISCUSSION

I.      Motion for Recusal Review

Plaintiff requests that the undersigned recuse herself from this case pursuant to 28 U.S.C. § 455(a). Title 28 U.S.C. § 455(a) requires that a judge "shall disqualify h[er]self in any proceeding in which h[er] impartiality might reasonably be questioned." Disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. Rice v. McKenzie, 581 F.2d 1114, 1116 (4th Cir. 1978). Here, plaintiff's recusal motion is based upon his contention that the undersigned previously served as an appointed judge on the North Carolina Utilities Commission. The undersigned has never held a position on the Utilities Commission, and there is no reasonable factual basis for doubting the undersigned's impartiality. Therefore, plaintiff's motion for recusal is DENIED.

II.     Motion for Default

Plaintiff filed a motion for service and a "motion requesting Rule 11 sanctions," which this court will construe as motions for default judgment. In his motions, plaintiff contends that defendants Mackey, Bush, and Keyser are in default because they did not file a timely answer.

13

On August 17, 2006, this court conducted a frivolity review and allowed the instant claims to proceed. In accordance with the Eastern District Prisoner Representation Plan (hereinafter "the Plan"), the Clerk of Court then requested North Carolina Prisoner Legal Services (hereinafter "NCPLS") to investigate plaintiff's claim. The Plan allowed defendants thirty (30) days following the response of NCPLS in which to answer or otherwise respond to the complaint. NCPLS filed its response on November 14, 2006. Accordingly, the answer of defendants Keyser, Mackey, and Bush was due on December 14, 2006. Defendants Keyser, Mackey, and Bush filed their answer on December 13, 2006. Because defendants Keyser, Mackey, and Bush filed a timely answer, plaintiff's motions for default judgment are DENIED.

III.    Discovery-Related Motions

Plaintiff filed a motion for discovery, seeking to compel defendants Keyser, Mackey, and Bush to provide him with certain discovery materials. Defendants Keyser, Mackey, and Bush responded to plaintiff's motion by filing two motions for a protective order. Plaintiff then filed a motion to strike defendants' motions for protective order, which this court will construe as a response to defendants' motions.

The answer of defendants Keyser, Mackey, and Bush raises the defense of qualified immunity. "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001). Moreover, the defense of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)); Lescs v. Martinsburg Police Dep't, 2005 WL 1607771, 138 Fed. App'x. 562, 564 (4th Cir. 2005) (unreported) (finding that the district court was

14

required to rule on defendant's dispositive motion raising qualified immunity issues prior to allowing discovery).

Because defendants' answer raises the defense of qualified immunity, they are entitled to resolution of the issue prior to being subject to the burdens of litigation, including discovery. Therefore, plaintiff's motion for discovery is held in abeyance until the court resolves the issue of qualified immunity, and the motions for a protective order of defendants Keyser, Mackey, and Bush are GRANTED. Finally, plaintiff's motion to strike defendants' motions for protective order is DENIED.

In addition to his discovery motions, plaintiff filed a motion for modification to his request for sanctions against attorney McCullough and a motion to find attorneys Allen and McCullough in contempt of the October 25, 2006 order. Attorneys McCullough and Allen represent defendants Keyser, Mackey, and Bush in this matter. Plaintiff's motions for sanctions against these attorneys appears to be based on alleged discovery abuses. As stated above, defendants are not required to participate in discovery at this point. Accordingly, the court finds no basis for plaintiff's motions for sanctions. Therefore, plaintiff's motions are DENIED.

IV.    Motion for Joinder and Amendment

Plaintiff filed a motion for joinder and amendment, which this court will construe as a motion to amend his complaint. Defendants Keyser, Mackey, and Bush responded to plaintiff's motion to amend, and plaintiff filed a motion to strike defendants' response. Plaintiff has provided no legal basis for his motion to strike. Therefore, plaintiff's motion to strike is DENIED.

Plaintiff seeks to amend his complaint to include Nurse Keiler and Nurse Anita Bandy McCwin (hereinafter "Nurse McCwin") as parties to this action. A party is allowed to amend his

15

complaint once as a matter of right before a responsive pleading is served. Fed. R. Civ. P. 15(a). Otherwise, a party may amend the party's pleading only by leave of court and leave shall be given when justice so requires. Id.[5] A responsive pleading has been filed in this action. Accordingly, plaintiff must have leave of court to amend his complaint. "Motions to amend are committed to the discretion of the trial court." Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir. 1991). A district court may deny a motion to amend a pleading where amendment would be futile. Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).

In this case, allowing plaintiff's motion to amend would be futile because he has not exhausted his administrative remedies against either Nurse Keiler or Nurse McCwin. As discussed, *infra*, a plaintiff must exhaust his administrative remedies before filing an action under § 1983 concerning his confinement.[6] See 42 U.S.C. § 1997e(a); Woodford v. Ngo, __ U.S. __,126 S.Ct. 2378, 2382-83 (2006). Here, plaintiff has not filed a grievance against either nurse, nor has he filed any grievance regarding this incident at the detention facility where the nurses were employed. Because plaintiff has not exhausted his administrative remedies against these parties, granting the motion to amend would be futile because the court would be required to dismiss these parties without prejudice to allow plaintiff the opportunity to exhaust. Therefore, plaintiff's motion to amend is DENIED as futile.[7]

---

[5]A party also may amend after obtaining written consent from the opposing party. Fed. R. Civ. P. 15(a). No such consent has been provided here.

[6] Plaintiff requests that defendant Cathey verify the grievance system at the Union County Detention Center. However, there is no requirement for federal certification of administrative grievance procedures utilized by a state or county detention facility. See Porter, 534 U.S. at 524; Spruill v. Gillis, 372 F.3d 218, 226-27 (3rd Cir. 2004).

[7] In addition to being futile, allowing plaintiff to amend his complaint at this point in the proceedings would be prejudicial. The filings in this case are voluminous, including several dispositive motions. The matters are now ripe for adjudication. For this reason, allowing plaintiff to amend his complaint at this time would be prejudicial to defendants. See Potter v. Shoney's, Inc., 108 F. Supp. 2d 489, 494 (M.D.N.C. 1999).

V.	Motions to Strike Against Defendant Cathey

Plaintiff filed a motion to strike defendant Cathey's evidence. This motion questions the authenticity of a letter written by a Nurse Keiler dated November 6, 2003. The court did not rely on this evidence in its analysis as set forth *infra.* Therefore, plaintiff's motion to strike is DENIED as moot.

Plaintiff also filed a motion to strike defendant Cathey's June 14, 2007 affidavits. Plaintiff has not presented a legal basis to strike the affidavits. Accordingly, plaintiff's motion is DENIED.

VI.	Motion to Dismiss

A.	Standard of Review

Rule 12(b)(6) allows a suit to be dismissed for failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion to dismiss only determines whether a claim is stated; it does not resolve disputed facts, the merits of the claim, or applicability of defenses. Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1356 (1990)). Indeed, a court should not dismiss a complaint that states a claim, even if it appears that the chance of recovery is remote. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). For the purposes of ruling on a Rule 12(b)(6) motion to dismiss, the court should construe allegations in the complaint as true and taken in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Republican Party, 980 F.2d at 952.

_____

17

B.   Analysis

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing an action under § 1983 concerning his confinement. See 42 U.S.C. § 1997e(a); Woodford, 126 S.Ct. at 2382-83 (holding that administrative law requires proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits). In Booth v. Churner, 532 U.S. 731, 741 (2001), the Supreme Court held that the PLRA requires a prisoner to exhaust his administrative remedies, even if the relief requested is not available under the administrative process. Thus, the exhaustion requirement applies to all inmate lawsuits challenging prison life. See Porter v. Nussle, 534 U.S. 516, 532 (2002).

Defendants Keyser, Mackey, and Bush argue that plaintiff's claim should be dismissed pursuant to the PLRA's exhaustion requirement because plaintiff has not sufficiently plead that he exhausted all available administrative remedies against them. The United States Supreme Court in Jones v. Bock, __ U.S. __, 127 S.Ct. 910 (2007), recently rejected this argument holding that a plaintiff is not required to specifically plead exhaustion. Rather, the Court held that exhaustion is an affirmative defense that must be properly raised and proven by the defendant. Id. at 918-19; Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 681 (4th Cir. 2005).

Defendants Keyser, Mackey, and Bush have not provided sufficient evidence to establish that plaintiff failed to exhaust his administrative remedies. Therefore, the motion to dismiss for failure to exhaust administrative remedies of defendants Keyser, Mackey, and Bush is DENIED.

18

VII.    Summary Judgment

    A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty</u>

<u>Lobby</u>, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially

coming forward and demonstrating an absence of a genuine issue of material fact. <u>Celotex Corp.</u>

<u>v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving

party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring

trial. <u>Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). There

is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to

return a verdict for that party. <u>Anderson</u>, 477 U.S. at 250.

    B.    Analysis

        1.    Defendant Cathey

Plaintiff contends that defendant Cathey was deliberately indifferent to his serious medical

condition because he failed to provide him adequate mental health care and because he knowingly

allowed plaintiff to suffer severe and undue pain from his injuries. Defendant Cathey argues that

plaintiff's complaint should be dismissed for failure to exhaust administrative remedies. As stated,

the PLRA requires a prisoner to exhaust his administrative remedies before filing an action under §

1983 concerning his confinement.[8] <u>See</u> 42 U.S.C. § 1997e(a); <u>Woodford</u>, 126 S.Ct. at 2382-83. In

---

      [8] Plaintiff request that defendant Cathey verify the grievance system at the Union County Detention Center.
The court construes this as a request for certification of the detention center's administrative grievance procedure.
However, there is no requirement for federal certification of administrative grievance procedures utilized by a state or
county detention facility. <u>See</u> <u>Porter</u>, 534 U.S. at 524; <u>Spruill v. Gillis</u>, 372 F.3d 218, 226-27 (3rd Cir. 2004). Therefore,

<u>Booth</u>, 532 U.S. at 741, the Supreme Court held that the PLRA requires a prisoner to exhaust his administrative remedies even if the relief requested is not available under the administrative process. The Supreme Court explained the rationale underlying § 1997e(a) in <u>Porter</u>, 534 U.S. at 524-525, stating:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. <u>Booth</u>, 532 U.S. at 737. In other instances, the internal review might "filter out some frivolous claims." <u>Ibid.</u> And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. <u>See ibid.; see also</u> [McCarthy v.] <u>Madigan</u>, 503 U.S. [140, 146 (1992).]

The evidence shows that plaintiff has exhausted three grievances and attached these grievances to his complaint. (Stewart Aff. ¶ 21.) Each of the exhausted grievances, which were filed on DOC forms, made allegations against prison officials in the DOC system.[9] (<u>Id.</u>) None of the grievances referred to defendant Cathey, nor did they make any allegation regarding conduct that occurred at the detention facility where defendant Cathey was the sheriff.

Plaintiff contends that he did not file a grievance against defendant Cathey because he did not discover the alleged inadequate medical care until nearly three years after the incident. Plaintiff's pleadings, however, belie this contention. Specifically, plaintiff asserts that defendant Cathey provided inadequate mental health care at least by the date he jumped from the second-tier of the

---

plaintiff's request is without merit.

[9] It is clear from the grievances plaintiff previously filed at the detention center that he was aware of and in fact had utilized the detention facility's grievance procedure in the past to address an unrelated matter. (Stewart Aff. ¶ 16 and Ex. 11.)

detention facility. By virtue of this allegation, plaintiff clearly should have known that he received inadequate mental health care on the date he jumped. Plaintiff's pleadings also allege that he was told in November 2003, that his injuries required surgery and that he did not receive this surgery. Despite this alleged knowledge, plaintiff did not file a grievance against defendant Cathey while he was at the detention facility from November 2003 until March 2005. Nor did plaintiff submit a grievance against defendant Cathey after he learned of defendant Cathey's alleged deliberate indifference. Accordingly, because plaintiff did not exhaust his administrative remedies against defendant Cathey, his claim against him is DISMISSED without prejudice to allow plaintiff to exhaust his administrative remedies.

## 2. Defendant Harrison

Plaintiff alleges that defendant Harrison was deliberately indifferent to his serious medical condition because she refused to assist him in obtaining the "Dr. 2" shoes prescribed by defendant Keyser. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one – the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' " – and the second prong is subjective – the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379. Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). In order to demonstrate such an

21

extreme deprivation, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. See Helling v. McKinney, 509 U.S. 25, 33-35 (1993). A disagreement between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998); Sosebee v. Murphy, 797 F.2d 179, 181-82 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir. 1977).

Assuming without deciding that plaintiff is able to establish the objective prong of the Strickler test, he is unable to satisfy the subjective prong because he is unable to show that defendant Harrison acted with deliberate indifference. Instead, the evidence in the record shows that defendant Harrison submitted a request for approval of the prescribed shoes to the URB on January 30, 2006-the same date they were prescribed. (Harrison Aff. ¶ 4.) The URB approved the request for plaintiff's shoes on March 1, 2006. (Id.) The next day, defendant Harrison ordered the shoes from the manufacturer. (Id.) Plaintiff received the shoes on August 22, 2006, but returned them because he did not like the fit. (Id.) Ultimately, plaintiff received the replacement shoes on October 9, 2006. Accordingly, the record reflects that defendant Harrison diligently procured plaintiff's prescribed shoes. Plaintiff has not provided any evidence to the contrary. Nor has he provided any evidence that defendant Harrison provided inadequate medical care. Therefore, plaintiff's Eighth Amendment claim against defendant Harrison is without merit.

22

3.    Defendants Keyser, Mackey, and Bush

Defendants Keyser, Mackey, and Bush assert the defense of qualified immunity. Qualified immunity shields government officials performing discretionary functions from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which [a] reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818; DiMeglio v. Haines, 45 F.3d 790, 794 (4th Cir. 1995). This immunity "protects law enforcement officials from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.' " Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). Immunity applies to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Government officials performing a discretionary function are immune from civil damages unless: (i) the official's conduct violates a federal statutory or constitutional right; (ii) the right was clearly established at the time of the conduct; and (iii) an objectively reasonable officer would have understood that the conduct violated that right. Milstead v. Kibler, 243 F.3d 157, 161 (4th Cir. 1991) (citing Wilson v. Layne, 526 U.S. 603, 614-15 (1999)).

In his complaint, plaintiff contends that defendants Keyser, Mackey, and Bush were deliberately indifferent to his serious medical condition. As stated, "[i]n order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler, 989 F.2d at 1379 (4th Cir. 1993) (quoting Wilson, 501 U.S. at 298.).

23

### a. Defendant Keyser

Plaintiff contends that defendant Keyser was deliberately indifferent to his serious medical condition because he failed to adequately assist him in procuring special shoes. Assuming without deciding that plaintiff is able to establish the objective prong of the Strickler test, he is unable to satisfy the subjective prong because he is unable to show that defendant Keyser acted with deliberate indifference.

Plaintiff's medical records show that defendant Keyser saw and treated plaintiff on a regular basis from January 25, 2006 through July 12, 2006, the date plaintiff filed this lawsuit. The medical records also show that defendant Keyser ordered plaintiff a pair of custom "Dr. 2" shoes for support and strengthening of his ankle on January 30, 2006. The URB approved defendant Keyser's request for the shoes on March 1, 2006. After URB approval, the matter was referred to defendant Harrison so that she could order the shoes from the manufacturer. The records do not contain any evidence that defendant Keyser either refused to treat plaintiff or that he purposefully delayed the procurement of plaintiff's "Dr. 2" shoes. Accordingly, the plaintiff's medical records do not demonstrate that defendant Keyser acted with deliberate indifference. The court is entitled to rely on medical records kept in the ordinary course of business to support such a conclusion. See Bennett v. Reed, 534 F. Supp. 83, 87 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (1982). Accordingly, plaintiff has not presented sufficient evidence to support his Eighth Amendment claim. Because plaintiff is unable to establish a constitutional violation, defendant Keyser is entitled to qualified immunity.

24

### b.    Defendant Mackey

Plaintiff contends that defendant Mackey was deliberately indifferent to plaintiff's serious medical condition because she failed to refer him to a physician for treatment and allowed his condition to worsen. Again, assuming without deciding that plaintiff is able to establish the objective prong of the Strickler test, he is unable to satisfy the subjective prong because he is unable to show that defendant Mackey acted with deliberate indifference. Instead, the evidence shows that plaintiff began his treatment with defendant Mackey on July 8, 2005. The evidence also shows that plaintiff made several sick call requests complaining that his prescribed pain medication was not strong enough. Defendant Mackey was responsive to plaintiff's request and attempted to alter his medications, but noted that plaintiff had a history of skipping his prescribed doses. The evidence also shows that defendant Mackey referred plaintiff to Carolina Bone and Joint for further treatment of his orthopedic injuries on August 12, 2005.

From the evidence in the record, it does not appear that defendant Mackey acted with deliberate indifference, and plaintiff has presented no evidence to the contrary. At most, the evidence establishes that plaintiff disagreed with the course of treatment recommended by the medical staff. This is not constitutionally sufficient to support an Eighth Amendment claim. Wright, 766 F.2d at 849. Therefore, plaintiff's Eighth Amendment claim is without merit. Because plaintiff is unable to establish a constitutional violation, defendant Mackey is entitled to qualified immunity.

### c.    Defendant Bush

Plaintiff complains that defendant Bush was deliberately indifferent to this serious medical condition because he cancelled reconstructive surgery on plaintiff's feet when he became aware of

25

plaintiff's safekeeper status. Again, plaintiff is unable to satisfy the subjective prong of his Eighth Amendment claim because he is unable to show that defendant Mackey acted with deliberate indifference.

The evidence in the record indicates that plaintiff began seeing defendant Bush on September 25, 2003. Following his initial evaluation of plaintiff, defendant Bush ordered x-rays and a CT scan to assist in his diagnosis and treatment of plaintiff's condition. Plaintiff's medical records indicate that, on October 6, 2006, defendant Bush initially recommended surgery for plaintiff's left foot. However, this recommendation was modified at a follow-up appointment on October 20, 2006, after defendant Bush received the results of plaintiff's CT scan. Defendant Bush noted in his revised recommendation that it was best to allow plaintiff's left foot to heal prior to considering surgical intervention. Defendant Bush then scheduled plaintiff for another follow-up appointment for one week later. However, plaintiff did not attend this appointment and subsequently was transferred on November 2, 2003.

Plaintiff has presented no evidence that defendant Bush acted with deliberate indifference by revising his recommendation for surgical intervention. On the contrary, the evidence indicates that defendant Bush continually monitored plaintiff's condition and prescribed him medications to assist with pain management. Moreover, plaintiff's medical records show that he failed to attend a scheduled appointment. Thus, at most, the evidence in the record demonstrates that plaintiff disagreed with defendant Bush's course of treatment. As stated, a disagreement between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright, 766 F.2d at 849. Because plaintiff is unable to establish a constitutional violation, defendant Bush is entitled to qualified immunity.

26

CONCLUSION

For the foregoing reasons, plaintiff's motions for default judgment (DE ## 26, 42), motion to strike motion for protective order (DE # 43), motion for recusal review (DE # 52), motion for modification to plaintiff's request for sanctions against attorney McCullough (DE # 76), motion to find attorneys Allen and McCullough in contempt of the October 25, 2006 order (DE # 80), motion to dismiss or in the alternative strike the response of defendants Keyser, Mackey, and Bush to plaintiff's motion to amend/joinder (DE # 84), and motion to strike defendant Cathey's affidavits (DE # 97) are DENIED. Plaintiff's motion for joinder and amendment relating back to the original claim (DE # 75) is DENIED as futile, and plaintiff's motion to strike defendant Cathey's evidence (DE # 87), motion that specific issues be tried by a jury (DE # 77), motion for supplemental discovery (DE # 96) are DENIED as moot. To the extent that any of plaintiff's pleadings are construed as a cross-motion for summary judgment, plaintiff's motions are DENIED as moot. The motions for protective order/motions to strike of defendants Keyser, Mackey, and Bush (DE ## 36, 46) are GRANTED. Having determined that defendant Keyser, Mackey, and Bush are entitled to the defense of qualified immunity, plaintiff's motion for discovery (DE # 41) is DENIED. The motion to dismiss of defendants Keyser, Mackey, and Bush (DE # 30) is DENIED; however, their motion for summary judgment (DE # 63) is GRANTED. The motions for summary judgment of

27

defendant Harrison (DE # 23) and defendant Cathey (DE # 53) also are GRANTED. The Clerk of

Court is DIRECTED to close this case.

SO ORDERED, this the 4ᵗ day of August, 2007.

LOUISE W. FLANAGAN
Chief United States District Judge